ZEIGLER v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Term. June 6, 1907.)

APPEAL—EVIDENCE—REVERSAL.

Where, in an action for injuries due to the alleged faulty construction of a subway, plaintiff's testimony and admissions with reference to the side of the train from which he alighted, were in irreconcilable conflict, he was not entitled to a reversal of a judgment for defendant, because the court limited the testimony with reference to defects to the west side of the platform in question, where a verdict for plaintiff could not stand.

Appeal from Municipal Court, Borough of Manhattan, Eleventh District.

Action by Ernest Zeigler against the Interborough Rapid Transit Company. From a judgment in favor of defendant, dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GILDERSLEEVE, P. J., and FITZGERALD and GOFF, JJ.

Charles La Rue, for appellant.

Charles A. Gardiner (J. Osgood Nichols and Fredk. H. Cunning-ham, of counsel), for respondent.

GOFF, J.  Action for personal injuries due to faulty construction of subway.  On December 19, 1904, plaintiff, a champion national wrestler of the United States, alighted from a south-bound subway train at Fourteenth street at about five feet north of the south stairway.  The main conflict was as to whether it was on an express or local train.  The justice held "that the evidence shows that he got out on the express side of the platform, and the evidence shows where that was, by letters and by the testimony."

Briefly the "letters" and "testimony" consisted of the following: Plaintiff wrote a letter to defendant directly after the accident, in which he says: "On Monday, Dec. 19, '04, while getting off an express train. * * *"  Shortly after (December 30th) an agent of the defendant called on plaintiff who made out an affidavit in which he said: "I was getting off about the middle car of a downtown express at Fourteenth St. * * *"  Both of these documents were put in evidence.  As to the testimony, defendant relies upon what he calls an admission brought out on cross-examination in this manner:

"Q. So you did write a letter stating that you were getting off an express train?  That is probably how it happened?  A. Yes, sir."

Plaintiff's counsel contends that this is a "double-barreled" question, and that plaintiff was only answering the first part as to the letter.  On the other hand, plaintiff testified positively that it was on the west side of the downtown island platform at which he alighted, which was admitted to be the downtown side.  This assertion he clung to, repeating it four times, although he said he did not know on which side express and local trains ran.  While plaintiff's counsel was cross-questioning defendant's engineer as to distances, it was asked what the gap between car and platform was on the west side.  Upon objection the court said: "I think I will confine you to the express side of this platform"—and this, without referring the matter to the jury impaneled in the case.  After defendant had rested, plaintiff was recalled, and his attention directed to his conflicting statements, which was objected to on the ground of impeaching his own witness.  The following discussion then occurred:

"The Court: I do not think the admission of this testimony will help you any.  This has already been gone over, and I have ruled upon the evidence as it then existed.

"Plaintiff's Counsel: Nevertheless I think it is my duty to press the question.

"The Court: I don't think I will permit the testimony at this time.  (Objection sustained.)"

Defendant's counsel then moved to dismiss the complaint on the grounds of (1) contributory negligence; (2) no negligence shown on the part of the company; and (3) that "the evidence shows that the maximum space between the station and platform was 4½ to 3½ inches * * *" on the express side.  After citing a case:

"The Court: I will hold that the evidence shows that he got out on the express side of the platform, and the evidence shows where that was, by the letters and by the testimony.    .

"Plaintiff's Counsel: The man wasn't on the east side of the platform, be· cause that is not the fact, nor is it supported by the evidence, nor is it my theory of the case.    .·

"The Court: Upon the evidence as it is the complaint is dismissed. (Ex· ception to plaintiff.)

"Plaintiff's Counsel: I move to go to the jury upon the question of the defendant's negligence and the plaintiff's freedom from contributory negli· gence. (Motion denied. Exception to plaintiff. Case closed.)"

Plaintiff's counsel contends that this controversy was due to a mistake of fact which plaintiff should be allowed to explain, and which should be sent to the jury to determine on which side plaintiff did alight. Assuming that the justice allowed the case to go to the jury and that the jury rendered a verdict for the plaintiff, it is inevitable that the verdict would have to be set aside, for the law cast upon the plaintiff the burden of proving his case by a preponderance of credible testimony. In view of the apparently irreconcilable differences in his testimony and admissions, how can it be maintained that he (an interested witness) had successfully borne the burden of proof. On the facts as presented the ruling was right, and judgment should be affirmed.

Judgment affirmed, with costs. All concur.